UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANHEUSER-BUSCH, INC., | ) | |
| | ) | |
| Plaintiff /Counterclaim Defendant, | ) ) ) | |
| vs. | ) ) | Case No. 4:10CV01296 AGF |
| AFA DISPENSING GROUP B.V. and DISPENSING TECHNOLOGIES B.V., | ) ) ) | |
| Defendants /Counterclaim Plaintiffs. | ) ) ) | |

## MEMORANDUM AND ORDER

This diversity action is before the Court on the motion of Plaintiff Anheuser-Busch, Inc. ("A-B") to compel arbitration and stay the counterclaim for specific performance filed by Defendants AFA Dispensing Group B.V. and Dispensing Technologies B.V. (collectively "AFA"). A hearing was held on this motion on November 3, 2010. For the reasons set forth below, the motion to compel arbitration and stay AFA's counterclaim shall be granted.

## BACKGROUND

On December 18, 2009, A-B and AFA entered into a Supply Agreement pursuant to which AFA, using A-B's technology, would manufacture and supply A-B with the component parts of a new product to be produced by A-B. Under the Supply Agreement, AFA became the exclusive supplier of the component parts in a specified geographic territory, and A-B agreed to purchase the parts shipped by AFA.

Each party had the right to terminate the Supply Agreement upon a material breach thereof by the other party that was not cured within a specified time period, up to 90 days. Otherwise, the Supply Agreement was to continue for a specified period of time following the initial receipt by A-B of a shipment of component parts by AFA. The Supply Agreement contained a non-compete clause, which provided that upon termination of the Supply Agreement, in certain circumstances, the non-compete clause would survive for the remainder of the Supply Agreement's term. The Supply Agreement incorporated the terms of a separate Confidentiality Agreement between the parties dated December 9, 2009. The Supply Agreement provided that it was to be governed by the laws of the State of New York.

Section 17 of the Supply Agreement, entitled "Arbitration," provided in relevant part, as follows:

> (a) Except as otherwise provided in Section 17(b), any controversy or dispute arising out of or in connection with this Agreement, its interpretation, performance, or termination ("Dispute") that the Parties are unable to resolve within ninety (90) days after written notice by one Party to the other of the existence of such Dispute, will be submitted to [binding] arbitration.
>
> \* \* \*
>
> (b) In addition to all other rights available under the law, each Party shall be entitled to injunctive relief (without the posting of any bond and without proof of actual damages) restraining the breach or threatened breach of each obligation under this Agreement and to specific performance of each obligation under this Agreement. The Parties agree that monetary damages would not be adequate compensation for any loss incurred by reason of a breach of any obligation under this Agreement and, to the extent permitted by applicable law, agree to waive the defense in any action for

> injunctive relief or specific performance of any obligation under this Agreement that a remedy at law would be adequate.
>
> (c) In the event of any Dispute, the parties shall continue to perform their respective obligations under this Agreement during the pendency of arbitration proceedings unless and until the arbitral tribunal otherwise orders.

(Doc. #13-1, p. 22, filed under seal.)

Shortly after the Supply Agreement was signed, controversy between the parties arose, and on July 14, 2010, AFA sent A-B a formal notice of dispute, declaring that A-B was in material breach of § 17(c) for terminating performance prior to the completion of arbitration. AFA stated that it intended to pursue an injunction if A-B did not confirm, by July 16, 2010, its commitment to perform under the Supply Agreement. On July 16, 2010, A-B initiated this action by filing a two-count complaint against AFA. Count I sought a declaratory judgment that AFA repudiated and breached the Supply Agreement, that the Confidentiality Agreement and non-compete clause of the Supply Agreement remained in full force and effect, and that A-B did not breach the Supply Agreement. Count II requested preliminary and permanent injunctive relief to enforce the Confidentiality Agreement and non-compete clause of the Supply Agreement, and to enjoin AFA from seeking to force A-B to perform under the Supply Agreement and from claiming that A-B breached that agreement. No damages were requested in either count.

On July 21, 2010, AFA filed a complaint in New York state court for a temporary restraining order ("TRO") and preliminary injunction, seeking to compel A-B's continued performance under the Supply Agreement, "pending the final determination of the

3

parties' arbitration," and to enlarge the time the parties had to commence arbitration under New York law. On July 22, 2010, A-B removed the New York case to the federal District Court for the Southern District of New York. On July 27, 2010, that court denied, in a summary order, AFA's request for a TRO and preliminary injunction. (Doc. #104-4.)

Also on July 27, 2010, A-B filed a motion for a TRO and preliminary injunction in this Court seeking to enjoin AFA from breaching the Confidentiality Agreement and non-compete clause in the Supply Agreement. On the same day, following a hearing, this Court entered a TRO requiring AFA to abide by the Confidentiality Agreement and non-compete clause, pending an evidentiary hearing on A-B's motion for a preliminary injunction.

On August 18, 2010, the New York court issued a Memorandum explaining its decision of July 27, 2020. (Doc. #104-4.) After rejecting A-B's argument to dismiss or stay the case under the "first-filed" rule, in deference to the case pending in this Court, the New York court denied AFA's request for a TRO or preliminary injunction. The court held that AFA had failed to demonstrate that sufficient imminent and irreparable harm would result should such relief be denied. This holding was based in part on a June 2010 email from AFA to A-B demanding monetary compensation for A-B's alleged severance of the relationship. The court held that the statement in § 17(b) of the Supply Agreement that monetary damages would not be adequate compensation for loss incurred due to a breach did not require the court to bypass consideration of the factors normally required

4

for a TRO. The court concluded that "[AFA] failed to show that an injunction is necessary to preserve the arbitration panel's ability to effectively hear and determine claims for money damages as a consequence of each party's alleged repudiation of the Supply Agreement."

The New York court also could not say that AFA's view that § 17(c) of the Supply Agreement required continued performance of the entire Supply Agreement pending arbitration was more likely to prevail over A-B's view that continued performance was only required with regard to provisions that survived termination. Lastly, the court noted that enjoining the parties to do business together was "particularly undesirable," as they both admitted that there was "very little commonality of interest," and added that such an order might require the court to supervise the relationship.

On August 23, 2010, AFA filed its answer and counterclaims to A-B's complaint in this Court. In its answer, AFA asserted as one of its affirmative defenses that "A-B commenced this lawsuit in violation of Section 17(a) of the Supply Agreement, which obligates the parties to submit any disputes relating to the performance or termination of the agreement to arbitration." (Doc. #66 at p. 11.) Count I of A-B's counterclaim sought declaratory judgment that A-B breached and wrongfully terminated the Supply Agreement and that AFA did not; Count II sought specific performance compelling A-B to perform under the Supply Agreement; and Count III sought, in the alternative, damages for A-B's breach of contract. AFA asserted in its counterclaim that this Court has jurisdiction over the counterclaims despite the parties' arbitration agreement because A-B

waived its right to arbitrate the dispute by commencing and prosecuting this action and asserting a claim seeking a declaratory judgment regarding the merits of the parties' dispute. Id. at p. 21.

An evidentiary hearing on A-B's motion for a preliminary injunction commenced on August 25, 2010. At that hearing, consistent with its prior correspondence, A-B made plain its intent to seek arbitration at the end of the 90-day cooling off period provided under the contract. On the second day of the hearing, based on representations by AFA that it had no intent to breach either the non-compete or the confidentiality provisions, the Court suggested that perhaps there was no need for a preliminary injunction, and suggested that the parties attempt to resolve the preliminary injunction motion by agreement. Because AFA had claimed that A-B had waived its right to arbitration, the Court further suggested that the issue of whether the matter was to be heard in court or in arbitration could be presented expeditiously in either the Southern District of New York or in this district.

Following the Court's suggestion, the parties met with one another, and at the close of the second day, before AFA presented its witnesses, the parties entered into a stipulation (the "Stipulation") resolving the preliminary injunction motion. The Stipulation, which was read into the record, provided in its entirety, as follows:

> Defendants agree to comply with the obligations under the December 18th, 2009 Supply Agreement and the December 9, 2009 Confidentiality Agreement as follows:

6

> (1) Defendants agree not to violate Section 1(k) of the Supply Agreement, and
>
> (2) not to disclose or use confidential information in violation of the initial Confidentiality Agreement.
>
> Defendants agree that they will be bound by this agreement for 18 months or until a final determination on the merits, whichever is sooner. If the final determination on the merits has not occurred within 18 months from the date hereof, today's date, and the parties do not agree to an extension of this agreement, Plaintiff reserves the right to reinstate its claim for a preliminary injunction.
>
> Further, the parties jointly agree that they will affirmatively seek an expedited trial and any appeals if the matter is litigated in court or an expedited arbitration and any judicial proceedings pertaining thereto if the matter is referred to arbitration.
>
> The parties agree that this Court retains jurisdiction to enforce the terms of this agreement.

(Tr. of Hr'g, Doc. #116-3, p.11-12.)

On September 14, 2010, consistent with the Stipulation, this Court ordered the parties to file "a joint status report advising the Court of the status of the parties' efforts to initiate arbitration or to present the issue of arbitration to some forum for determination." (Doc. #95.)

On September 16, 2010, A-B filed an amended complaint, withdrawing Count I of its complaint seeking a declaratory judgment. On September 30, 2010, A-B filed the present motion to compel arbitration and stay AFA's counterclaim for specific performance, pending arbitration, and AFA filed a motion to strike A-B's first amended

complaint. On October 26, 2010, the Court granted AFA's unopposed motion, filed on October 13, 1010, to dismiss its first and third counterclaims without prejudice.

On October 27, 2010, the Southern District of New York filed a conditional order "discontinuing" AFA's case without prejudice pursuant to representations by AFA that AFA would not appeal that Court's denial of injunctive relief, and that the parties had agreed to a briefing schedule in this Court regarding the issue of arbitration. At the November 3, 2010 hearing in this Court on A-B's motion to compel arbitration, the parties represented that arbitration proceedings have commenced, with both sides participating in the initial stages of choosing an arbitration panel. The parties also confirmed their willingness to cooperate with efforts to expedite the arbitration, should this Court order the parties to proceed with arbitration.

## **ARGUMENTS OF THE PARTIES**

In opposition to A-B's motion to compel arbitration and stay AFA's counterclaim for specific performance, AFA appears to have abandoned its waiver argument, and instead argues that the Court should deny A-B's request for a stay of AFA's specific performance counterclaim. AFA maintains that A-B agreed in the Stipulation to an expedited (bench) trial on AFA's specific performance claim. AFA further contends that § 17(b) of the Supply Agreement provides the right for a judicial determination of AFA's specific performance counterclaim, by virtue of § 17(a), which states that the remedies provided for in § 17(b), including specific performance, are excluded from the arbitration requirement. AFA argues that this counterclaim is "intensely time-sensitive" and that

8

without an expedited trial on the issue, it will be too late for this Court to grant AFA effective specific performance relief.

A-B disputes AFA's interpretation of the Stipulation and argues that the parties entered into the Stipulation with the understanding that A-B would file a motion to compel arbitration, and that the Court would then decide the issue of waiver. If the Court found that A-B waived arbitration, then the parties agreed to expedited litigation. If the Court granted the motion to compel arbitration, then the parties agreed to proceed in arbitration on an expedited basis. A-B asserts that the Stipulation did not contemplate that the parties would proceed simultaneously in Court and in arbitration (on the breach of contract claims), much less move forward on AFA's specific performance claim prior to arbitration; in fact, A-B notes, the Stipulation makes no mention of AFA's specific performance claim despite the fact that it was pending at the time the Stipulation was entered into.

A-B further argues that AFA's reading § 17 of the Supply Agreement is flawed because such a reading would eviscerate the main agreement in this section that any controversy or dispute arising out of or in connection with the Supply Agreement, "its interpretation, performance, or termination," would be submitted to arbitration. A-B argues that this Court would not be able to rule on AFA's request for specific performance without deciding the merits of the dispute between the parties, which is exactly what § 17, as a whole, contemplated would be submitted to arbitration. According to A-B, § 17(b) recognizes that there may be situations in which one or both of

the parties would need specific performance or injunctive relief prior to the dispute going to arbitration, and provides for a judicial remedy in such eventualities.

Additionally, A-B argues that staying AFA's specific performance claim is warranted in furtherance of the strong federal policy favoring arbitration, to preserve judicial resources, and to avoid the risk of inconsistent rulings by the Court and the arbitration panel.

## **DISCUSSION**

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Bank of Am., N.A. v. UMB Fin. Servs., Inc., 618 F.3d 906, 911 (8th Cir. 2010) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 ((1983)). The Court first concludes that A-B did not waive its right to compel arbitration, because A-B did not "substantially invoke[] the litigation machinery before asserting its arbitration right." See Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 921 (8th Cir. 2009) (citations omitted) (standard for finding waiver). Prior to filing the current motion to compel arbitration, the only issues litigated by A-B were those related to obtaining a preliminary injunction to enjoin AFA from violating non-compete and confidentiality obligations. The mere fact that A-B included in its original complaint the declaratory judgment count with respect to the legal issues in this case, did not waive its right to compel arbitration on

these legal claims. See, e.g., Affiliated Foods Midwest Coop., Inc. v. Integrated Distribution Solutions, LLC, 460 F. Supp. 2d 1068, 1072 (D. Neb. 2006) (holding that providers of software components and support did not waive the right to compel arbitration with customer, even if they did act inconsistently with that right, where customer was not prejudiced, since the case was in the very early stages of litigation, and the claims had yet to be argued on the merits). Moreover, A-B at all times maintained its intent to seek arbitration.

The Court next concludes that AFA's interpretation of both the Stipulation and the Arbitration clause of the Supply Agreement are not reasonable. AFA is correct in asserting that despite the federal policy favoring arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (citations omitted). As such, the Court is called upon to interpret the Arbitration clause in the Supply Agreement as well as the Stipulation between the parties. "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Hudson v. ConAgra Poultry Co., 484 F.3d 496, 500 (8th Cir. 2007) (citations omitted); see also Brady v. Williams Capital Group, L.P., 14 N.Y.3d 459, 465 (N.Y. 2010).

Under New York law, "[i]n construing a contract, the document must be read as a whole to determine the parties' purpose and intent . . . giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized." Sunrise

Mall Assocs. v. Import Alley of Sunrise Mall, Inc., 621 N.Y.S.2d 662 (N.Y.A.D. 2 Dept. 1995) (citations omitted). "[A] contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (N.Y. 2007) (citation omitted). A stipulation is a binding contract to be construed according to the rules of contract interpretation. Donnelly v. Janice Large, 909 N.Y.S.2d 205, *207 (N.Y.A.D. 3 Dept. 2010).

Addressing first the Stipulation, the Court finds that AFA's interpretation of the Stipulation, pursuant to which A-B withdrew its motion for a preliminary injunction, is not reasonable. The Stipulation provides that "the matter" would either be litigated in Court (if it were found that A-B waived its right to compel arbitration) or submitted to arbitration. There is no indication that parallel proceedings on different aspects of "the matter" might ensue, one in arbitration and one before this Court. The Court notes that A-B's interpretation of the Stipulation comports with the Court's understanding of the parties' intent at the time the Stipulation was entered into, as further reflected in the Court's Order of September 14, 2010.

The Court also rejects AFA's reading of the Arbitration clause. Upon careful review of the Arbitration clause in the Supply Agreement, the Court believes that reading the three subsections of § 17 together leads to the conclusion that by entitling the parties to pursue, in court, "injunctive relief . . . restraining the breach or threatened breach of each obligation under this Agreement and to specific performance of each obligation

12

under this Agreement," the parties did not intend to have a court, as well as an arbitration panel, adjudicate controversies or disputes "arising out of or in connection with [the Supply Agreement], its interpretation, performance, or termination . . . that the Parties are unable to resolve within ninety (90) days after written notice by one Party to the other of the existence of such Dispute." This is just what the Court would be called upon to do under AFA's reading of § 17. Indeed, such an approach might lead to inconsistent results with regard to the "interpretation, performance, termination" of the Supply Agreement.

Each party, in fact, availed itself of the right granted in § 17(b) -- A-B by seeking, in this Court, a TRO and preliminary injunction restraining AFA from breaching the non-compete and confidentiality agreements, and AFA by seeking, in the New York court, a TRO and preliminary injunction ordering specific performance by A-B pending arbitration of the contract dispute. Section 17(c) supports this interpretation of the first two subsections, by providing that in the event of a dispute, the parties "shall continue to perform their respective obligations under this Agreement during the pendency of arbitration proceedings unless and until the arbitral tribunal otherwise orders." This subsection does not state that the parties were to continue performing "during the pendency of judicial proceedings," or "during the pendency of judicial and/or arbitration proceedings." In sum, the Court believes that the interpretation advocated by AFA is not a reasonable way to read the "Arbitration" provision as a whole.

Rather, as A-B asserts, the parties are obligated by the terms of the Arbitration Agreement to submit issues pertaining to the interpretation, performance and termination

of the Supply Agreement to arbitration; they are obligated to do so expeditiously pursuant to the terms of the Stipulation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Plaintiff A-B to compel arbitration and to stay Defendants' counterclaim for specific performance is **GRANTED**. [Doc. #103]

**IT IS FURTHER ORDERED** that the parties shall notify the Court upon the completion of arbitration whether there are any issues remaining for resolution by this Court.

**IT IS FURTHER ORDERED** that Defendants' motion to strike Plaintiff's first amended complaint is **DENIED**.[1] [Doc. #107]

**IT IS FURTHER ORDERED** that this case is stayed and that the Clerk of Court shall administratively close the case, subject to reopening on a motion filed by either party.

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of December, 2010.

---

[1] At the hearing, counsel for AFA represented that AFA withdrew this motion and did not intend to pursue it. In fact, AFA did not take that action, and so the motion is denied herein.